NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**THASHA A. BOYD,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

_____

2018-1459

_____

Petition for review of the Merit Systems Protection Board in No. AT-0752-17-0412-I-1.

_____

Decided: July 2, 2018

_____

THASHA A. BOYD, Kennesaw, GA, pro se.

LAUREN MOORE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

_____

Before REYNA, BRYSON, and HUGHES, *Circuit Judges.*

PER CURIAM.

This petition for review relates to a decision by the Merit Systems Protection Board to remove Thasha A. Boyd from federal service after being charged with inappropriate conduct toward a co-worker and failure to follow her supervisor's instructions. For the reasons explained below, we affirm.

BACKGROUND

Thasha A. Boyd ("Ms. Boyd") was employed as a Veterans Service Representative as a probationary employee at the Department of Veterans Affairs' ("DVA") Veterans Benefits Administration's Atlanta Regional Office. Prior to her employment with the DVA, Ms. Boyd was employed at the Department of Labor ("DOL") as an Immigration Program Analyst from May 3, 2010 to April 4, 2011. Subsequent to her departure from DOL and prior to her employment with the DVA, Ms. Boyd worked at the Internal Revenue Service.

On December 7, 2016, an employee of the Disabled American Veterans ("DAV"), Matthew Jahn ("Mr. Jahn"), filed a complaint alleging that Ms. Boyd had been making sexual advances towards him. Mr. Jahn's complaint stated that he had informed Ms. Boyd that he was in a relationship, but that Ms. Boyd "continue[d] to harass [him]," and that "she has started to touch my leg, back, and tries to kiss my neck." Appx51.[1] According to Mr. Jahn, Ms. Boyd also asked him whether "when [he] got home, if [he] was going to think about [having sex with] her." *Id.*

On December 12, 2016, Ms. Boyd's supervisor, Chantal Wynter ("Ms. Wynter"), issued a Stay Away Notifica-

---

[1]    All citations to "Appx" herein refer to the Separate Appendix for Respondent.

tion ("SAN") to Ms. Boyd. The SAN stated that "[e]ffective immediately, and until further notice, you are instructed to have absolutely no contact or (written/verbal) communication with Matthew Jahn, DAV Representative. Violation of these instructions may result in disciplinary or adverse action being taken against you." Appx53. The SAN also stated that if Ms. Boyd had a business need to contact Mr. Jahn, she should consult with Ms. Wynter or a "designated management official at the Veterans Service Center so that appropriate contact can be arranged." *Id.*

On December 13, 2016, Mr. Jahn reported that he arrived at work to discover a letter and a drink on his desk. He maintained that both were from Ms. Boyd. Later that same day, Ms. Boyd attempted to make contact with Mr. Jahn while he was outside walking on the DVA campus after lunch. According to Mr. Jahn, Ms. Boyd approached him and said that since they were not in the DVA building, they could talk outside. Mr. Jahn informed Ms. Boyd that there was a no contact order in effect, and she responded that she would therefore leave him alone.

On December 21, 2016, Ms. Boyd received a memorandum from the Veterans Service Center Manager notifying her of a temporary reassignment of her duty location. The memorandum directed Ms. Boyd to work from home until further notice, pending an inquiry into Mr. Jahn's allegations. Ms. Boyd was also instructed not to return to the DVA's Atlanta Regional Office for any reason unless approved by her supervisor. On December 28, 2016, Ms. Boyd received a second memorandum instructing her to report to a temporary duty location at the Health Eligibility Center as an alternate work site. On January 12, 2017, by memorandum, Ms. Boyd was directed to return to her official duty station at the DVA's Atlanta Regional Office.

During this time, the DVA conducted a fact-finding investigation into the allegations contained in Mr. Jahn's complaint. On February 9, 2017, the DVA proposed that Ms. Boyd be removed from her position based on two charges of misconduct: (1) inappropriate conduct, and (2) failure to follow her supervisor's instructions. Ms. Boyd submitted a written response to the proposed removal on February 23, 2017. On April 18, 2017, the Director of the DVA's Atlanta Regional Office issued a decision sustaining the charges against Ms. Boyd and found that the penalty of removal was appropriate. Ms. Boyd's removal was made effective on April 24, 2017.

On April 20, 2017, Ms. Boyd appealed the DVA's removal decision to the Merit Systems Protection Board ("Board"). An administrative judge upheld the removal action. Ms. Boyd petitioned for review. We have jurisdiction pursuant to 5 U.S.C. § 7703.

## DISCUSSION

Our standard of review requires us to "hold unlawful and set aside any agency action, findings, or conclusions found to be—(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We will not overturn a Board decision as long as it is supported by relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Jacobs v. Dep't of Justice,* 35 F.3d 1543, 1546 (Fed. Cir. 1994) (citing *Brewer v. U.S. Postal Serv.,* 647 F.2d 1093, 1096 (Ct. Cl. 1981)). An agency must prove the charged misconduct by a preponderance of the evidence. *Pope v. U.S. Postal Serv.,* 114 F.3d 1133, 1148 (Fed. Cir. 1997).

## I. Inappropriate Conduct

According to Ms. Boyd, the administrative judge erred in finding that the DVA had substantial evidence to prove its charges of inappropriate conduct because the DVA was essentially charging Ms. Boyd with sexual harassment and insubordination. Therefore, Ms. Boyd contends the DVA was required to prove the elements of sexual harassment to support its inappropriate conduct charge. The administrative judge addressed this claim and explained that the DVA did not charge Ms. Boyd with sexual harassment, but was rather "recapping the appellant's conduct as characterized by Mr. Jahn in his written complaint." Appx9. The administrative judge further explained that a charge of inappropriate conduct does not require a showing of intent, and relying on Mr. Jahn's characterization of her behavior does not turn the inappropriate conduct charge into one of sexual harassment. *Id.*

Substantial evidence supports the administrative judge's findings and conclusions of inappropriate conduct. With respect to the first specification of unwanted sexual advances towards Mr. Jahn, the administrative judge determined that Mr. Jahn's complaint and his and his co-workers' statements were credible. For example, Mr. Jahn was not a DVA employee and had no reason to benefit from filing a complaint against Ms. Boyd. *See* Appx7. Further, the assertions made in Mr. Jahn's complaint were consistent with the statements that he and his co-workers made to DVA investigators. *See* Appx8. The administrative judge also noted that Ms. Boyd did not deny the allegations contained in the specification for inappropriate conduct.

Ms. Boyd also argues that Mr. Jahn's allegations in his complaint were inconsistent with his statements to DVA investigators. Specifically, she argues that after Mr. Jahn's complaint was filed, Mr. Jahn responded to ques-

tions from investigators by stating that Ms. Boyd's contacts with him "weren't too much of a concern with him." Pet'r's Br. 13. But that statement was made with respect to Ms. Boyd's hugging him. Mr. Jahn went on to state that additional unwanted physical contact from Ms. Boyd escalated to the point that "it became too much." Appx105. Thus, the administrative judge properly determined that sufficient evidence supports the agency's first specification.

With respect to the second specification of inappropriate conduct—that Ms. Boyd was disrespectful and rude during a meeting conducted by her supervisor on December 6, 2016—the administrative judge reviewed the evidence and found that "the overwhelming weight of the evidence supports that [Ms. Boyd] was disrespectful and rude during the meeting and called her co-workers liars"; and that Ms. Boyd failed to provide any evidence of a hostile work environment or retaliation to discredit the statements of her co-workers. *See* Appx12–13. We conclude that sufficient evidence supports the agency's second specification.

## II. Failure to Follow a Supervisor's Instructions

To prove a charge of failure to follow a supervisor's instructions, an agency must establish that the employee (1) was given proper instructions, and (2) failed to follow the instructions. *Hamilton v. USPS*, 71 M.S.P.R. 547, 555–56 (1996). It is not necessary for the agency to prove that a failure to follow instructions was intentional. *Id.*

We conclude that substantial evidence supports the administrative judge's finding that Ms. Boyd failed to follow her supervisor's instructions by violating the terms of the SAN. The administrative judge found that the SAN provided proper instruction to Ms. Boyd because her supervisors had authority to direct Ms. Boyd in work-related matters and the SAN did not direct Ms. Boyd to do anything illegal or improper. Appx15. The administra-

tive judge also found evidence that supported Mr. Jahn's allegation that Ms. Boyd violated the SAN by entering his workplace after the SAN was issued and placing a drink and note on Mr. Jahn's desk. For example, the Board relied on the DVA investigators' determination that Ms. Boyd's work badge had been used to enter Mr. Jahn's general work area at the same time. Appx16.

The administrative judge also determined that Ms. Boyd violated the SAN by approaching and speaking to Mr. Jahn outside his office building. Ms. Boyd never refuted the allegation, but rather argued that the SAN was confusing as to what areas of the DVA office building or off-duty time the SAN applied. The administrative judge found that the SAN was "sufficiently clear that a reasonable person would find that it prohibited their contact with Mr. Jahn anywhere on the VA campus." Appx18.

Ms. Boyd's only argument in response to this charge is that "the [administrative judge] alleges that Mr. Jahn understood what the [SAN] consisted of, however Mr. Jahn made no such statement." Pet'r's Br. 15. Mr. Jahn's memorandum to his supervisor on December 13, 2016 describing Ms. Boyd's attempts to contact him shows that he clearly understood the SAN to mean that Ms. Boyd was not to contact him. Accordingly, the administrative judge's determination should not be disturbed.

### III. Ms. Boyd's Affirmative Defenses

The administrative judge addressed Ms. Boyd's affirmative defenses of (1) whistleblowing, (2) due process, (3) harmful error, (4) reprisal for prior Equal Employment Opportunity activity, and (5) reprisal for writing to her Congressman, and determined that she did not prove any of them. *See* Appx19–37. Because the administrative judge's conclusions were supported by substantial evidence, we agree for the same reasons.

CONCLUSION

Ms. Boyd advances several other arguments, but we find these arguments equally unpersuasive. We find no reversible error in the Board's decision and therefore affirm.

**AFFIRMED**

COSTS

No costs.